### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| LEONARD JAIGOBIN | : | Case No. 08-17826 |
| DBA BOB'S TRUCKING SERVICE | : | (Chapter 11) |
| | : | |
| Debtor-In-Possession | : | |

### FOURTH AMENDED PLAN OF REORGANIZATION

The Debtor, Leonard Jaigobin dba Bob's Trucking Service ("**Debtor**"), proposes the following Fourth Amended Plan of Reorganization ("**Plan**"):

### ARTICLE I - DEFINITIONS FOR THIS PLAN

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the following meanings as used in the Plan.

"**Administrative Claim**" means any Claim for administrative expenses as described in Section 503(b) of the Bankruptcy Code, including the actual and necessary costs and expenses incurred by the Debtor after the Petition Date, Claims for fees and expenses of professional persons pursuant to Sections 330 and 331 of the Bankruptcy Code (through the period of the Effective Date) and fees, if any, due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), but excluding interest and other charges accruing on Secured Claims after the Petition Date.

"**Allowed Claim**" means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim or Unsecured Claim) held by a Creditor of the Debtor, which Claim shall have

1

been either scheduled as undisputed, non-contingent and liquidated in the Schedules or filed

prior to October 20, 2008, as a Proof of Claim with the Bankruptcy Court, which Proof of Claim

is ultimately allowed. Where there is a difference between the amount scheduled as undisputed

and liquidated by Debtor in his Schedules and the amount set forth in the proof of Claim filed by

the affected Creditor, the amount shown in the proof of Claim shall govern for purposes of

allowance unless objected to by the Debtor, in which case the Allowed Claim shall be in the

amount allowed by the Bankruptcy Court. Unless otherwise specified in the Plan or in the Final

Order allowing such Claim, an Allowed Claim shall not include interest maturing or accruing

after the Petition Date, or any punitive orexemplary damages, or any fine, penalty or

forfeiture. "**Bankruptcy Code**" means Title 11 of the United States Code.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of
Maryland unless a specific reference is made to another bankruptcy court.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated
pursuant to 28 U.S.C. § 2075, together with the local rules of the Bankruptcy Court.

"**Chapter 11**" means Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sections 1101 et
seq.  "**Claim**" means any right to payment, whether or not such right is reduced to judgment,
liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
equitable, secured or unsecured; or any right to an equitable remedy for breach of performance,
if such breach gives rise to a right to payment, whether or not such right to an equitable remedy
is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or
unsecured.

"**Confirmation**" mean the entry of a Final Order by the Bankruptcy Court confirming the Plan in accordance with Chapter 11.

"**Confirmation Order**" means a Final Order of the Bankruptcy Court confirming the Debtor's Plan.

"**Creditor**" means any entity that, on the Effective Date of the Plan, holds a Claim against the Debtor that arose, or is deemed to have arisen, before the Effective Date, including a Claim against the Debtor of a kind specified in Sections 502(g), 502(h) or 502(i)of the Bankruptcy Code.

"**Debtor**" means the Debtor, Leonard Jaigobin dba Bob's Trucking Service.

"**Disclosure Statement**" means the written Disclosure Statement as amended (including all exhibits and schedules thereto or referred to therein) submitted by the Debtor concerning the Plan as approved by the Bankruptcy Court pursuant to Section 1125(b) of the Bankruptcy Code.

"**Effective Date**" means a date not more than thirty days following the date on which the Confirmation Order is entered.

"**Final Order**" means an order of the Bankruptcy Court with respect to which any timely filed appeal or motion for reconsideration has been resolved and with respect to which no further timely appeal or request for reconsideration may be filed.

"***Ipso Facto* Bankruptcy Clauses**" means any provisions of Loan Documents pursuant to which a default is declared solely by reason of the Debtor's bankruptcy filing.

"**Lien**" has the same meaning given under Section 101(37) of the Bankruptcy Code.

"**Loan Documents**" means all of the documents evidencing, securing and perfecting any Secured Claim.

"**Petition Date**" means the date of the filing of the Debtor's Petition initiating this Chapter 11 case on June 12, 2008.

"**Plan**" means this Plan of Reorganization in its present form or as it may be amended or supplemented.

"**Priority Claim**" means any Claim, other than an Administrative Claim, to the extent that Claim is accorded priority in Section 507(a) of the Bankruptcy Code.

"**Schedules**" means the Schedules of Assets and Liabilities and Statement of Financial Affairs and any amendments or supplements thereto filed by the Debtor with the Bankruptcy Court.

"**Secured Claim**" means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in the property or to the extent of the amount subject to setoff, pursuant to Section 506(a) of the Bankruptcy Code.

"**Substantial Consummation**" means such time as the Debtor has paid the greater part of the payments due under this Plan.

"**Unsecured Claim**" means a Claim other than a Secured Claim, Administrative Claim or Priority Claim.


## ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS

**Class I**:        The Allowed Administrative Claims for costs and expenses which accrued subsequent to the filing of this case, including professional fees and costs as the same are allowed and approved prior or subsequent to the Effective Date of this Plan.

**Class II**:        Allowed Priority Claims other than those included in Class 1. This class is unimpaired.

4

**Class III**:       The holder of the note secured by a first deed of trust on the Debtor's property at 12609 Hill Creek Lane Potomac, MD 20854, with a principal balance of approximately $1,759,000.00. This class is impaired by this Plan, although the Debtor is seeking to modify his mortgage outside of the Plan.

**Class IV**:       The holder of the note secured by a second deed of trust on the Debtor's property at 12609 Hill Creek Lane Potomac, MD 20854. This class is impaired and will be treated as an unsecured claim pursuant to an Order of this Court entered on October 11, 2011.

**Class V**:       The holder of the note secured by five trucks and one trailer[1] and a blanket secured claim on all business assets, Financial Federal Credit, Inc., now People United Equipment Finance Corporation (PUEFC). This class is impaired and the debt has been fully satisfied pursuant to an agreement of the parties.

**Class VI**:       The holder of the note secured by three trucks (one trailer was involved in an accident for which insurance), Paccar Financial Corp, one trailer was surrendered to the Lender. This class is impaired. However, the agreed balance will be paid in full in a approximately six months.

**Class VII**:       The holder of the note secured by one truck, EFS Credit Trust. This class is impaired, and a Complaint to Value Collateral is pending.

**Class VIII**:       The holder of the note secured by one truck, TCF Equipment Finance. This class is impaired. This equipment was surrendered to the lender and any unpaid balance will be treated as general unsecured debt.

---

[1] On information and belief, the trailer was damaged in an accident and the proceeds of the insurance related thereto were applied to the balance of the debt owed to PUEFC.

**Class IX**:        The holders of the note secured by one truck, Hitachi Capital American Corp. This class is impaired.

**Class X**:        The holders of the note secured by two trucks, Wells Fargo Equipment Finance, Inc. This class is impaired, and a Complaint to Value Collateral is pending.

**Class XI**:        The holder of the note secured by two trucks, Key Equipment Finance, Inc. This class is impaired and has been paid in full pursuant to the terms of an agreement entered between the parties. The equipment is no longer functioning and has been abandoned as scrap.

**Class XII**:        The holder of a note secured by a 2008 BMW x5, BMW Finance. This class is unimpaired. This claim has been satisfied during the pendency of the Chapter 11.

**Class XIII**:        The holder of a note secured by a 2007 Ford F550, Ford Motor Finance. This class is unimpaired. The vehicle was totaled in an accident and insurance proceeds paid the balance to the lender. This claim has been paid in full.

**Class XIV**:        The holder of a note secured by a 2007 BMW 335, BMW Finance. This class is unimpaired. This claim has been satisfied during the pendency of the Chapter 11.

**Class XV**:        Allowed Unsecured Claims. This class is impaired.


**ARTICLE III - TREATMENT OF CLAIMS**

**Class I**:        Creditors shall be paid in full for Allowed Claims on the Effective Date of the Plan or in accordance with payment plans satisfactory to those creditors. Statutory fees due by the date of Confirmation pursuant to the provisions of 28 U.S.C. § 1930 are included in this class.

6

**Professionals** requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses. No fee or expense application need be filed by any entity with respect to fees and expenses incurred after the Effective Date, and the Debtor shall be authorized to pay such fees and expenses without further order of the Court.

**Class II:**        Holder of an Allowed Priority Claim shall be paid the full amount of its Allowed Claim, with interest at 6%, within six months of the Effective Date of the Plan unless the holder of the Claim agrees to less favorable treatment. Payment of such Claim shall be full

satisfaction of any and all claims that were, could be or could have been asserted against the Debtor for any tax year prior to the calendar year in which the Debtor's Chapter 11 case was filed.  Inasmuch as this class includes claims arising from a pre-petition audit of the Debtor's taxes, payment of this claim shall conclusively resolve for all time any and all issues that were or could have been raised in that audit.

**Class III**:        Upon the Effective Date of the Plan, Debtor shall continue to remit monthly payments of $3,701.00 to Wells Fargo  and continue the process of a loan modification with the lender. Pre-petition arrears of $22,747.85 shall be paid through the Plan over sixty (60) months at the rate of $380.00 per month. Post petition arrears shall be paid at the end of the original term of the Mortgage loan at the interest rate designated in the Note. If the lender refuses to allow the post petition arrears to be paid at the end of the Mortgage loan, Debtor shall surrender the property.

At such time as the Debtor decides to surrender the property, he will file and serve a Notice in the Bankruptcy Court that he is surrendering the property and imposing a 90-day

7

deadline thereafter within which the first lienholder must file a proof of claim for its deficiency claim, failing which, the lienholder will not be sharing in the distribution with other unsecured creditors.  If the creditor does file by the bar date, any such deficiency claim becomes one of the Class XV unsecured claims, to be paid pro rata with the other unsecured creditors.

**Class IV:**     A Motion to Avoid the second lien of Wells Fargo on Debtor's residence was granted by this Court on October 11, 2011. No further payments will be made except that the second lien claim will be treated as an unsecured claim and the lien wil be avoided upon discharge of the Debtor.

**Class V:**     Financial Federal Credit, Inc., now People's United Equipment Finance Corp has been paid the balance of its loan pursuant to an agreement resolved between the parties. PUEFC will release its security interest and mark the obligation as satisfied.

**Class VI**:     Paccar Financial Corp. will be paid the sum of $8,000.00 per month until the value of the equipment on which it has a lien, $111,410.00 (balance calculated as of the date of the Consent Order entered into an or about April 25, 2011), plus interest at 6% per annum has been paid, at which time Paccar Financial Corp will record a  release of  its security interest. The balance of the claim will be treated as unsecured. This loan will be satisfied within the next six months. PACCAR will release its security interest and mark the obligation as satisfied.

**Class VII**:     EFS will be paid the sum of $1,400.00 per month until the remaining value of the equipment on which it has a lien, $24,500.00, has been paid in full, with interest at 6% per annum,  at which time EFS will record a release of  its security interest. The balance of the claim will be treated as unsecured. A Complaint to Determine Value under Section 506(a) of

8

the Bankruptcy code has been filed and will be determined by the Court. In the event that the Complaint is not fully successful, the length of time needed to satisfy this creditor would be affected, but not the monthly payment amount.

**Class VIII:**    The equipment has been surrendered to TCF and any balance will be treated as unsecured.

**Class IX:**    As agreed, Hitachi will be paid the sum of $2,125.54 per month until the value of the equipment on which it has a lien, $70,000.00 (less payments made from March 2013) with interest at 6% per annum, at which time Hitachi will record a release of its security interest. The balance of Hitachi's claim will be treated as unsecured.

**Class X**:    Wells Fargo will be paid the sum of $4,000.00 per month until the value of the equipment on which it has a lien, $59,760.00, has been paid in full, with interest at 6% per annum, at which time Wells Fargo will record a release of its security interest. The balance of the claim will be treated as an unsecured claim. A Complaint to Determine Value under Section 506(a) of the Bankruptcy code has been filed and will be determined by the Court. In the event that the Complaint is not fully successful, the length of time needed to satisfy this creditor would be affected, but not the monthly payment amount.

**Class XI:**    Key Equipment: This claim has been paid in full pursuant to an agreement reached between the parties. This equipment no longer has value and has been scrapped.

**Class XII:**    BMW Financial (2008 BMW X5). The Debtor has satisfied his obligation in full. The lender will mark the obligation as satisfied and shall record a release of its security interest.

9

**Class XIII:**     Ford Motor Financial. This claim has been paid in full. The vehicle (2007 Ford F550) was totaled and no longer an asset of the Debtor. The balance of the loan was satisfied with insurance proceeds.

**Class XIV:**     BMW Financial. This class is secured by a vehicle titled in the name of Debtor and his daughter, Shenelle, who is the beneficial owner thereof. Shenelle has made all monthly payment on this vehicle and the loan has been satisfied, BMW Financial shall record a release of its lien on the vehicle.

**Class XV:**     Unsecured Claims: This class shall be paid at the rate of $3,000.00 per monthly for sixty (60) months. Unsecured claimants will receive a *pro rata* distribution. At the end of each quarter, the Debtor will determine the extent to which his monthly disposable income exceeded $3,000.00 per month he paid unsecured creditors in the three months of that quarter.  He will then pay seventy-five percent (75%) of any such surplus disposable income to the unsecured creditors pro rata.

As to All Classes: Ipso Facto Bankruptcy in contracts shall be void.


### ARTICLE IV - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Effective upon entry of a Final Order confirming the Plan, the Debtor assumes any executory contracts or leases (whether or not already expired) not otherwise provided for in this Plan or in Final Orders entered by the Bankruptcy Court prior to confirmation of the Plan.

10

## ARTICLE V - MEANS FOR IMPLEMENTING THE PLAN

1.       **Funding** for the Plan shall come from the revenues of Bob's Trucking Service. The Debtor shall be responsible for the issuance and mailing of all payments required under this Plan. Mailing shall be considered proper if made to the address shown on a Claimant's Proof of Claim to the address shown in the Debtor's Schedules or if no Proof of Claim has been filed by a Claimant, or to such new or different address as filed with the Court and served upon the Debtor. To account for monthly variation in gross income, the Debtor shall be deemed in compliance with the Plan, and not in default, and no penalties shall be due, so long as any payments required under the Plan are made within sixty days of the date due.

2.       **Disputed claims.**  Should any Claim be disputed, no payments shall be made on that Claim until the dispute is resolved by agreement or Final Order of the Bankruptcy Court.

3.       **Unclaimed distributions**.    Any distributions  under this  Plan which are not negotiated within sixty (60) days of mailing shall be cancelled and retained by the Debtor, free of any obligation under this Plan.

4.       **Additional documents**. The Debtor may execute such documents and take other actions as necessary or appropriate to effectuate the transactions provided for by the Plan.

5.   **Default and cure**. Should the Debtor default on payment of any obligations under the Plan, the party to whom the payment is due shall give notice thereof to the Debtor and his counsel, whereupon the Debtor shall have thirty days to cure any such default.

## ARTICLE VI - DISCHARGE AND INJUNCTION

The rights provided by the Plan shall be in complete satisfaction, discharge and release of all Claims of any nature whatever against the Debtor. Except as otherwise provided in the Plan or the Confirmation Order, upon completion of payments required by the Plan the Debtor shall be discharged of all Claims, including but not limited to, debts, demands, liabilities and Claims arising before the Effective Date and all debts of the kind specified in Sections 502(g), 502(h)

11

and 502(i) of the Bankruptcy Code, whether or not a proof of Claim is filed or deemed filed, such Claim is allowed under Section 502 of the Bankruptcy Code or the holder of the Claim has accepted the Plan. All persons and entities shall be precluded from asserting against the Debtor any Claims based upon any act or omission or other activity of any kind that occurred prior to the Effective Date. Except as otherwise provided in the Plan or the Confirmation Order, the completion of payments under the Plan shall act as a discharge of all Claims against the Debtor and such discharge shall void any judgment against the Debtor obtained at any time. So long as payments are made in accordance with this Plan, creditors shall not pursue payment from co-obligors, if any, who may be jointly liable with the Debtor on any Claims.

The discharge resulting from completion of the Plan payments shall bar, on account of any discharged debt or Claim, the commencement or continuation of any action against the Debtor, his successors or their respective property; enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, his successors or their property; creating, perfecting or enforcing any lien against the Debtor, his successors or their property; asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, his successors or their property; or commencing or continuing any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

(a)     Notwithstanding the foregoing, the discharge described in this Article shall not bar the enforcement, in accordance with the terms of this Plan, of any Lien specifically preserved by this Plan or the obligation which it secures; nor

(a)     discharge the Debtor of any debts which are not dischargeable pursuant to the provisions of Section 523 of the Bankruptcy Code.

## ARTICLE VII - PREPAYMENT

12

There shall be no penalty for prepayment of any obligations under this Plan. Payment in full to any creditor at any time of the remaining balance of any obligation under this Plan shall satisfy and extinguish the Debtor's obligations to that creditor.

## ARTICLE VIII - MODIFICATION OF THE PLAN

The Debtor may modify this Plan in accordance with Section 1127 of the Bankruptcy Code. After Confirmation, the Debtor may, with the approval of the Court and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or any inconsistencies in the Plan or Disclosure Statement, such as may be necessary to carry out the purposes and effect of the Plan.

## ARTICLE IX - EXEMPTION FROM TRANSFER TAXES

Pursuant to Section 1146(c) of the Bankruptcy Code, the making or delivery of an instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax or similar tax.

## ARTICLE X - CASE CLOSING AND DISCHARGE

The Debtor may apply to the Court to close the case upon Substantial Consummation of the Plan. In the event that Plan payments have not been completed at that time, the Debtor may later re-open the case without any case reopening filing fee once Plan payments have been completed, so that the Court may enter the Debtor's discharge.

Notwithstanding the closing of the case by the Bankruptcy Court, should the Debtor fail to make any payments required under the Plan, any creditor may apply to the Court to reopen

this case and seek to compel the Debtor to comply with the terms of the Plan or to convert this case to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE XI - RETENTION OF JURISDICTION

The Bankruptcy Court shall, after Confirmation, retain jurisdiction of this case and any related proceedings to the fullest extent permitted by the Bankruptcy Code and other applicable law, to:

I.      determine the allowance of Claims against the Debtor pursuant to Section 502 of the Bankruptcy Code;

II.      determine any matters arising concerning the title to property of the Debtor, the sale thereof, or liens against the said property;

III.      determine the allowance of timely filed Claims resulting from the rejection of Executory Contracts;

IV.      determine any dispute as to the allowance of Claims;

V.      hear and determine any adversary proceedings or contested matters commenced by the Debtor or any other party in interest;

VI.      fix and determine professional fees and other costs of administration; and

VII.      enforce the Debtor's discharge and other provisions of the Plan and resolve all other matters as may be set forth in the Order of Confirmation.

VIII.      Upon entry of a Confirmation Order, the Plan shall be administered by the Debtor throughout its term. The Bankruptcy Court shall retain limited and continuing jurisdiction over the Debtor and his Chapter 11 proceedings through and including the date that all Claims have been satisfied in the manner required under this Plan to the extent permitted under the Bankruptcy Code, including but not limited to 11 U.S.C. § 1142. However, at any time following six (6) months after the Confirmation Order, and at any time after Cash Distributions have

14

commenced under the Plan after the Effective Date, the Debtor reserves the right to file a Motion to Recognize Substantial Consummation of the Plan and seek entry of an Order of Full Administration, following substantial consummation of the Plan as defined under 11 U.S.C. § 1101(2) combined with a Request for Final Decree. However, there will be no Final Decree entered in this case until all Cash Distributions to all Allowed Claims have occurred and until all Administrative Expense Claims, including United States Trustee fees, have been paid. Although the Chapter 11 Case will be closed following the filing of the above referenced Motion to Recognize Substantial Consummatation of the Plan, the Plan will continue to be performed and prosecuted by the Debtor as though the Chapter 11 Case were open, up to and including the point where the Debtor has completed all Cash Distributions under the Plan. Any party in interest may seek relief provided for in this Plan by reopening the Chapter 11 Case through the term of the Plan until all Cash Distributions have been completed. This is not intended to diminish or lessen the Court's jurisdiction preserved over this Chapter 11 Case. The purpose of the action is to avoid the payment of quarterly fees to the United States Trustee following substantial consummation of the Plan, by dismissal as contemplated by 28 U.S.C. § 1930(a)(6). By entry of the Confirmation Order the provisions of Local Rule 3022-1 (a)(1), (2) shall be waived in respect to this Plan; however, the entry of the Confirmation Order shall give authority for only Local Rule 3022-1(a)(3) to apply to this Chapter 11 Case. In this scenario, the Debtor may need to seek to reopen the Chapter 11 case in order to obtain a discharge given that a final decree will not be entered by the Bankruptcy Court until the conclusion of all Cash Distributions under the Plan. No retroactive quarterly fees to the Office of the United States Trustee will be recaptured or realized against the Debtor as a consequence of reopening the Chapter 11 Case for discharge.

The Bankruptcy Court may also, pursuant to the Plan, determine tax liabilities in accordance with Sections 505 and 1146(d) of the Bankruptcy Code as well as any dispute as to the taxation of the Debtor when necessary for the rehabilitation of the Debtor or the orderly and efficient exercise of the other jurisdiction retained hereunder, including, but not limited to, any issues that may arise under Section 103(a)(1) of the Internal Revenue Code of 1986, as amended.

RESPECTFULLY SUBMITTED,

GOREN, WOLFF & ORENSTEIN, LLC

Dated: June 28, 2013                     /s/ Robert K. Goren

Robert K. Goren, Esq.

15245 Shady Grove Road, Suite 465 North

Rockville, MD 20850

(301) 984-6266

rgoren@gwolaw.com

Attorney for Debtor-in-Possession